PARKER DOUGLAS (8924)
Chief Federal Deputy
DAVID N. WOLF (6688)
GREG SODERBERG (14016)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
350 North State Street, Ste. 230
P.O. Box 142320
Salt Lake City, Utah 84114-2320
Telephone: (801) 538-9600
Facsimile: (801) 538-1121
E-mail: pdouglas@utah.gov
E-mail: dnwolf@utah.gov
E-mail: gmsoderberg@utah.gov

*Counsel for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CINEMA PUB, L.L.C., d/b/a BREWVIES,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SALVADOR D. PETILOS, Director; CADE MEIER, Deputy Director; NINA MCDERMOTT, Director of Compliance, Licensing Enforcement, Utah Department of Alcoholic Beverage Control, in their official capacities; JOHN T. NIELSEN, Chairman; JEFFREY WRIGHT; KATHLEEN MCCONKIE COLLINWOOD; OLIVIA VELA AGRAZ; STEVEN B. BATEMAN; S. NEAL BERUBE; AMANDA SMITH, Members, Utah Alcoholic Beverage Control Commission, in their official capacities,<br><br>　　　　　　　　　Defendants. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br><br><br>Case No. 2:16-cv-00318-DN<br><br>Judge David Nuffer |

# TABLE OF CONTENTS

MOTION .......................................................................................................................... vi

MEMORANDUM ............................................................................................................ vii

   INTRODUCTION ........................................................................................................ vii

   BACKGROUND FACTS ............................................................................................. viii

   STATEMENT OF ELEMENTS AND UNDISPUTED FACTS ................................... x

     A.   Utah Code Ann. § 32B-1-504 is Subject to Intermediate Scrutiny Under *O'Brien*. ...... x

     B.   The *O'Brien* Test. ......................................................................................... xi

   SUMMARY JUDGMENT STANDARD ..................................................................... xiii

   ARGUMENT ................................................................................................................ 1

     1.   THE STATUTE IS SUBJECT TO INTERMEDIATE SCRUTINY UNDER *O'BRIEN* BECAUSE THE STATUTE'S PURPOSE IS UNRELATED TO THE SUPPRESSION OF FREE EXPRESSION. ....................................................... 1

     2.   THE STATE REGULATES ALCOHOL SALES AND CONSUMPTION PURSUANT TO ITS LEGITIMATE GOVERNMENTAL POWER ............................... 3

     3.   THE STATUTE FURTHERS THE IMPORTANT GOVERNMENT INTEREST OF REDUCING THE ADVERSE SECONDARY EFFECTS THAT RESULT FROM COMBINING ALCOHOL AND SEXUAL CONTENT IN FILM. ................................ 4

       Little is Required to Support the Governmental Interest ................................ 5

       Secondary Effects Definition ........................................................................ 6

       Prior Judicial Opinions Support the Governmental Interest ......................... 7

       Evidence Supports the Governmental Interest ............................................. 8

       Plaintiff's Expert Testimony Fails to Cast Direct Doubt on Defendants' Rationale .... 10

     4.   THE STATUTE INCONVENIENCES SPEECH NO MORE THAN NECESSARY TO ACHIEVE ITS PURPOSE. ............................................... 14

     5.   SECTION 32B-1-504(7) IS CONSTITUTIONAL UNDER THE UTAH CONSTITUTION. ....................................................................................... 17

   CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ................................... xi, 3, 7

*Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cty., Kan.*, 492 F.3d 1164 (10th Cir. 2007) ............................................................................................................. 4

*Alameda Books, Inc. v. City of Los Angeles*, 222 F.3d 719 (9th Cir. 2000) ................................ 14

*American Bush v. City of S. Salt Lake*, 2006 UT 40, 140 P.3d 1235 .................................... 17, 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................... 1

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) ........................................... 5, 8, 9, 15

*Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702 (7th Cir. 2003) ................................... 7, 15

*Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121 (7th Cir. 2001) ............................... vi, 7

*Boos v. Barry*, 485 U.S. 312 (1988) ................................................................ 7

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ......................................................... xi

*Bushco v. Shurtleff*, 729 F.3d 1294 (10th Cir. 2013) .............................................. xi

*BZAPS, Inc. v. City of Mankato*, 268 F.3d 603 (8th Cir. 2001) .................................... 7, 8

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) .......... xi, 4

*California v. LaRue*, 409 U.S. 109 (1972) ........................................................ 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................. xiii

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) .............................. xiii, 1, 2, 4, 6, 7

*City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) ...................... 1, 2, 3, 4, 6, 14

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) ............................ xiii, 3, 4

*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, of California, 121 Cal. Rptr. 2d 729 (Cal. Ct. App. 2002) ............................................. 7

*G.M. Enterprises, Inc. v. Town of St. Joseph, Wis.*, 350 F.3d 631 (7th Cir. 2003)........................ 7

*Gary v. City of Warner Robins*, 311 F.3d 1334 (11th Cir. 2002) ................................... 7

*Heideman v. S. Salt Lake City*, 165 Fed. Appx. 627 (10th Cir. 2006) ........................................... 7

*Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003).................................. x, 1, 2, 5, 16

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) .................................................... xi

*Marks v. United States*, 430 U.S. 188 (1977) ............................................................... 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................... 1

*Phillips v. Borough of Keyport*, 107 F.3d 164 (3d Cir. 1997) ........................................ 6

*Richland Bookmart, Inc. v. Knox Cty., Tenn.*, 555 F.3d 512 (6th Cir. 2009) ................................ 5

*Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997) ............... 17

*Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993 (11th Cir. 1998) ...................... vi, vii, 15

*Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981)...................................................... xi

*State v. Hernandez*, 2011 UT 70, 268 P.3d 822.......................................................... 17

*United States v. O'Brien*, 391 U.S. 367 (1968) .................................................. x, xi, 1, 2, 3, 6, 10

*United States v. Simons*, 129 F.3d 1386 (10th Cir. 1997)............................................. 1

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................... 6

*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ........................................... 17

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) ........................................... 7

**Statutes**

United States Constitution  amend. XXI, § 2........................................................... 4

United States Constitution amend. 1................................................................... vii

Utah Code Ann. § 32B-1-502(1) .......................................................... x, 2, 6

Utah Code Ann. § 32B-1-504 ......................................................................... x, 1, 3

Utah Code Ann. § 32B-1-505 ............................................................................. 8

Utah Const. art. I, § 1 ....................................................................................... 17

**Rules**

Federal Rule of Civil Procedure 56(a) ................................................... v, vi, xiii

# MOTION

Defendants, through counsel and pursuant to Federal Rule of Civil Procedure 56(a) and District of Utah Local Rules 7-1 and 56-1, submit this Motion for Summary Judgment and Supporting Memorandum. Summary judgment is warranted on Plaintiff's claims because prohibiting alcohol service during movies with explicit sexual content does not violate Plaintiff's First Amendment rights, or Plaintiff's rights under the Utah Constitution.

Utah Code section 32B-1-504(7) (the "Statute"), which prohibits Department of Alcoholic Beverage Control (the "DABC") licensees from serving alcohol while showing a film with sexually explicit content, should be upheld because it reduces adverse secondary effects. Judicial opinions and alcohol experts confirm what is commonly known: that combining alcohol and sexual content is an "explosive combination,"[1] that can lead to sexual aggression and sexual violence, increased drinking, and reported and unreported crime.[2] The Statute's purpose and effect are to reduce these adverse secondary effects that result from combining alcohol and sexually explicit images.

Plaintiff's First Amendment right to transmit the speech of another (by showing *Deadpool* or other films) is only inconvenienced slightly, if at all, by the state's regulation, and the public's access to protected speech is not impeded at all. Plaintiff is free to show whatever sexually explicit R-rated films it chooses, so long as it does not serve alcohol at the same time,

---

[1] *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1124 (7th Cir. 2001).
[2] Dr. William George Expert Report p. 2 doc. 37-1, attached as Defs.' App. p. 5.

and individuals can see the same movies at other theaters. Plaintiff does not have a constitutional right to serve beer while showing movies.[3]

Movies that are prohibited at Brewvies while alcohol is served are not censored in general by the State. In fact, *Deadpool* was shown at numerous other theaters in Utah,[4] and it is the highest grossing R-rated movie in the history of film.[5] There is no suppression of ideas or expression occurring—only alcohol regulation aimed at decreasing adverse secondary effects. Defendants therefore ask the Court to find that the Statute does not violate Plaintiff's speech rights under the United States and Utah Constitutions, grant Defendants' Motion, and enter summary judgment in favor of Defendants.

# MEMORANDUM

## INTRODUCTION

Plaintiff Cinemapub LLC, doing business as Brewvies ("Brewvies") has sued Defendants, seeking an order from this Court that the Defendants' enforcement of the Statute violates its constitutional rights.[6] Plaintiff's single claim in its Complaint argues that the Statute, which prohibits a business that is licensed with the DABC from serving alcohol while showing films that depict sex, violates its rights under the First Amendment to the United States Constitution and Article 1, sections 1 and 15 of the Utah Constitution.[7]

---

[3] *See Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 999 (11th Cir. 1998) ("we are unaware of any constitutional right to drink while watching nude dancing").
[4] Pl.'s Mot. Prelim. Inj., p. 6, doc. 6.
[5] *Id.* at 5.
[6] Compl. p. 8 ¶ 25 doc. 1.
[7] *Id.* pp. 7–8 ¶¶ 21–22

## BACKGROUND FACTS

The facts related to Brewvies' serving alcohol while showing *Deadpool* are not in dispute. Brewvies began showing *Deadpool* at its theater in February 2016.[8] Brewvies was also serving alcohol to its customers while they watched the film. The DABC asked the State Bureau of Investigation's Alcohol Unit to visit Brewvies and investigate.[9] The Alcohol Unit visited Brewvies, ordered beer, watched *Deadpool*, and noted scenes in *Deadpool* that violate the Statute.[10]

The Alcohol Unit identified scenes depicting: "numerous . . . acts of sexual intercourse with the female counterpart during a holiday themed sex-montage . . . having sex while nude (we see the woman sitting on the man's groin in bed, rocking on his lap as he fondles her bare breasts and she gasps) . . . [h]e is then shown behind her while she's on her hands and knees engaged in sexual intercourse."[11]

The officers also identified scenes depicting: "[t]he main character in the film . . . on his back under bed sheets briefly engaged in masturbation . . . using a stuffed unicorn toy."[12] Another scene "shows the main character (male) nude on his hands and knees on a bed while a woman wearing a leather bikini (with a strap-on penis that isn't shown) has her groin area pressed against the man's posterior . . . he is sweating and grimacing . . . during the sodomy . . . scene."[13]

---

[8] *Id.* p. 4 ¶ 11.

[9] *See* Reports from SBI's Alcohol Unit, attached as Defs.' App. pp. 14–18.

[10] *See id.*; George Rebuttal Report pp. 15–24 doc. 39-1 (images from *Deadpool*), attached as Defs.' App. pp. 33–42.

[11] Report of Agent Bullock, Defs.' App. pp. 16–18.

[12] *Id.*

[13] *Id.*

Additionally, the officers reported a scene "in which the main character (male) is naked. His penis is visible three times in this scene . . . [and] a scene at a strip club . . . [in which] [a] fully nude (female) stripper is shown for about three seconds (her breasts and pubic mound are visible) . . . ."[14] Finally, "[i]n the final credits, a drawing of the main character (male) is shown as he rides on the back of a unicorn, he rubs its horn briefly until the horn shoots outs [sic] rainbows (simulating orgasm). The tail of the unicorn raises slowly as he rubs the horn simulating arousal until the horn shoots out the rainbows."[15]

Based on the Bureau of Investigation's finding, the DABC issued a Notice of Agency Action, [16] which charged Brewvies with violating the Statute because Brewvies served alcohol while showing *Deadpool*.[17] The DABC agreed to stay the administrative proceeding, as well as any enforcement of the Statute against Brewvies, during the pendency of this lawsuit. Accordingly, Brewvies has not paid a fine or had any administrative action taken against its license, and is able at this time to serve alcohol while showing films that depict sex or nudity.

There is no question that Brewvies served alcohol while showing *Deadpool*, which contains graphic sexual images.[18] The central issue presented here is whether the Statute is justified by an important or substantial government interest. As shown below, prohibiting alcohol service during films with sexual content furthers the important government interest of reducing adverse secondary effects that result from the combination of alcohol and sexual content in film.

---

[14] *Id.*

[15] *Id.*

[16] Compl. p. 4 ¶ 12.

[17] *Id.* pp. 4–5 ¶¶ 13–14; *see* Notice of Agency Action, attached as Defs.' App. pp. 85–88.

[18] *See* Images from *Deadpool*, attached to Dr. George's Rebuttal Report, Defs.' App. 33–42. Brewvies has also shown numerous other films that contain graphic sexual images and served alcohol to its customers during these films. *See* Images from *Don Juan*, *50 Shades of Grey*, and *Zack and Miri Make a Porno*, attached to Dr. George's Rebuttal Report, Defs.' App. 43–84; *see also* List of Films Shown at Brewvies, Defs.' App. 326–30.

The Statute is constitutional because: (1) its purpose is unrelated to speech suppression; (2) it is a valid exercise of the State's power to regulate alcohol; (3) it furthers a substantial government interest; and (4) it prohibits no more speech than necessary to further the government's interest.

## STATEMENT OF ELEMENTS AND UNDISPUTED FACTS

**A.  Utah Code Ann. § 32B-1-504 is Subject to Intermediate Scrutiny Under *O'Brien*.**

Ordinances that impact expression are subject to intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367 (1968) if the purpose of the ordinance in question is "unrelated to the suppression of free expression."[19]

1.  The Statute's purpose is "to reduce the adverse secondary effects that the attire, conduct, and sexually oriented entertainers may have upon communities of this state; and protect the health, peace, safety, welfare, and morals or the residents of communities of this state."[20]

2.  The Statute states:

"[t]he following attire and conduct on premises or at an event regulated by the commission under this title are considered contrary to the public health, peace, safety, welfare, and morals, and are prohibited: . . . showing a film, still picture, electronic reproduction, or other visual reproduction depicting: (a) an act or simulated act of: (i) sexual intercourse; (ii) masturbation; (iii) sodomy; (iv) bestiality; (v) oral copulation; (vi) flagellation; or (vii) a sexual act that is prohibited by Utah law; (b) a person being touched, caressed, or fondled on the breast, buttocks, anus, or genitals; (c) a scene wherein an artificial device or inanimate object is employed to depict, or a drawing is employed to portray, an act prohibited by this section; or (d) a scene wherein a person displays the genitals or anus.[21]

---

[19] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1195 (10th Cir. 2003) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).
[20] Utah Code Ann. § 32B-1-502(1).
[21] *Id.* § 32B-1-504(7).

## B.  The *O'Brien* Test.

A statute that impacts expression[22] is upheld if (1) it is within the government's constitutional power; (2) it furthers an important or substantial government interest; (3) the government interest is unrelated to speech suppression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.[23]

1.  Regulating alcohol and enacting statutes to protect the health, safety, and welfare of Utah communities and to reduce adverse secondary effects are within the State's constitutional power.[24]

2.  Combining alcohol and sexual content in film produces adverse secondary effects, and negatively affects the health, safety, and welfare of Utah communities.[25] Defendants' expert witness, Dr. William George, stated in his Expert Report and testified as follows:

   a.  "Alcohol contributes causally to adverse responses to sexual conduct."[26]

---

[22] The First Amendment right at issue here is likely rooted in the Freedom of the Press, rather than Speech, because Brewvies seeks to protect its right to transmit the speech of another to the public. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) (stating that Freedom of the Press "is not confined to newspapers and periodicals" and that the Freedom of the Press "comprehends every sort of publication which affords a vehicle of information and opinion."); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("It cannot be doubted that motion pictures are a significant medium for the communication of ideas."); *see also Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65–66 (1981) (sexually explicit content that is not obscene is protected under First Amendment).

[23] *Bushco v. Shurtleff*, 729 F.3d 1294, 1304 (10th Cir. 2013) (quoting *O'Brien*, 391 U.S. at 376).

[24] *Bushco*, 729 F.3d at 1304 (finding that Utah's Sexual Solicitation Statute, enacted to protect public health, safety, and morals, was enacted within the State's constitutional power); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 515 (1996) (regulating alcohol is within state's power); *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 107 (1980) (same).

[25] *See* Expert Report of Dr. William George, Professor of Psychology and Adjunct Professor of American Ethnic Studies at the University of Washington in Seattle pp. 1–7 doc. 37-1, Defs.' App. pp. 4–13.

b. "Exposure to sexual content contributes causally to greater drinking."[27]

c. "[I]f you're feeling positive arousal from seeing titillating scenes like those in Deadpool, that would motivate you to want to maintain positive arousal by having a drink."[28]

d. "Alcohol and exposure to sexual content can have synergistic effects."[29] Including "drinking in anticipation of exposure to sexual content . . . actual exposure to sexual content that then stimulates arousal and further drinking . . . and alcohol induced lowering of inhibitions thereby further increasing responsivity to the sexual content and thereby heightening the likelihood of adverse sexual outcomes."[30]

e. Combining drinking alcohol and viewing scenes in movies portraying casual sex likely increases sexually aggressive behavior.[31]

f. There is sexually arousing content in *Deadpool* that alters people's sexual conduct, either to be more aggressive or taking more risk, compared to the hypothetical control condition of seeing something that doesn't have that content.[32]

g. "[A]dverse secondary effects—such as sex crimes (e.g., prostitution) and sexual violence (e.g., rape) are likely in communities adjacent to

---

[26] *Id.* at 2; *see also* Dr. George Dep. pp. 51–58, Defs.' App. 93–100.
[27] Dr. George Expert Report at 3 Defs.' App. 6.
[28] Dr. George Dep. p. 121–24, Defs.' App. 101–04.
[29] Dr. George Expert Report p. 3 doc. 37-1, Defs.' App. p. 6.
[30] *Id.*
[31] Dr. George Dep. pp. 151–52, Defs. App. 114–15.
[32] *Id.* at 142–43, Defs.' App. 112–13.

establishments providing their clientele with both alcohol and exposure to sexual content."[33]

3.  Defendants also rely on judicial opinions that describe the evidentiary basis for finding that adverse secondary effects result from combining alcohol and sex or nudity.[34]

4.  Reducing adverse secondary effects of combining alcohol and sexual content in film is unrelated to speech suppression.[35]

5.  The State does not otherwise restrict showing or viewing R-rated movies like *Deadpool*. At the time the Citation was issued, *Deadpool* was still showing in at least seven movie theaters in northern Utah (two months after it was released).[36] *Deadpool* is the highest grossing R-rated movie in the history of film.[37]

## SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the responsibility of informing the district court of the basis for its motion, and the motion should be granted so long as what is before the district court demonstrates the standard set forth in Rule 56 is satisfied.[38]

---

[33] Dr. George Expert Report p. 3 doc. 37-1, Defs.' App. p. 6.; Dr. George Dep. pp. 135–142, Defs.' App. 105–12. The quoted portions from Dr. George's report and deposition are just part of Dr. George's extensive analysis and opinions regarding the adverse secondary effects of combining alcohol and sexually explicit film. Defendants' incorporate by reference Dr. George's opinions and reports, and further reference to his reports is contained in Defendants Argument section, *infra*.

[34] *See infra* footnote 73 (citing cases); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 297 (2000) (O'Connor, J., joined by three justices) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) for the proposition that "reliance on a judicial opinion that describes the evidentiary basis is sufficient").

[35] *See City of Erie*, 529 U.S. at 310 (Souter, J., concurring in part and dissenting in part) ("Erie's stated interest in combating the secondary effects associated with nude dancing establishments is an interest unrelated to the suppression of expression.")

[36] Pl.'s Mot. Prelim. Inj., p. 6, doc. 6.

[37] *Id.* at 5.

[38] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To support summary judgment, the movant must point to evidence in the record that demonstrates an absence of a genuine issue of material fact, given the relevant substantive law.[39] "The substantive law of the case determines which facts are material."[40]

To defeat a motion for summary judgment, Plaintiff cannot merely rest on the allegations contained in the Complaint. Instead, Plaintiff "must, by affidavits or as otherwise provided in this rule, set out specific facts showing a genuine issue for trial."[41]

## ARGUMENT

Utah Code § 32B-1-504(7) does not violate Plaintiff's First Amendment right because (1) the Statute's purpose is unrelated to speech suppression; (2) the State is regulating alcohol and protecting the health, safety, and welfare of Utah communities pursuant to a legitimate governmental power; (3) the Statute furthers the important government interest of reducing adverse secondary effects that result from combining alcohol with viewing depictions of sex and sexual content; and (4) the incidental restriction on speech is no greater than necessary to further the government's interest. Similarly, the statute is constitutional under the Utah Constitution.

1. THE STATUTE IS SUBJECT TO INTERMEDIATE SCRUTINY UNDER *O'BRIEN* BECAUSE THE STATUTE'S PURPOSE IS UNRELATED TO THE SUPPRESSION OF FREE EXPRESSION.

Ordinances that impact expression are evaluated under the *O'Brien* test if the government purpose in enacting the ordinance in question is "unrelated to the suppression of free

---

[39] *United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997).

[40] *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[41] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 256.

1

expression."[42] "If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from *O'Brien* . . . ."[43]

In this case, the Statute's purpose is to reduce the adverse secondary effects that result from combining alcohol and viewing sexual content in film.[44] The proscriptions in the Statute are directed at prohibiting the service of alcohol at businesses where sexual imagery is displayed, the purpose of the Statute is not to suppress speech.[45] If the Utah legislature had wanted to suppress speech it would have prohibited Utah theaters from showing films with sexual content, by promulgating a much broader law that applied to all theaters. Instead, the Statute only impacts DABC licensees that want to serve alcohol while showing films with sexually explicit content. "It is typical of conduct restrictions evaluated under *O'Brien* to include some expressive, as well as some non-expressive, activities within their reach.[46] The Statute is subject to intermediate

---

[42]*Heideman*, 348 F.3d at 1195 (quoting *O'Brien*, 391 U.S. at 377); *see also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 445 (2002) (Kennedy, J., concurring in the judgment) ("A [government regulation] can be consistent with the First Amendment if it is likely to cause a significant decrease in secondary effects and a trivial decrease in the quantity of speech."); *City of Erie*, 529 U.S. at 289 ("To determine what level of scrutiny applies to the ordinance at issue here, we must decide whether the State's regulation is related to the suppression of expression.")
[43] *City of Erie*, 529 U.S. at 289.
[44] Utah Code Ann. § 32B-1-502(1); *Heideman*, 348 F.3d at 1195 (rejecting argument that South Salt Lake public nudity prohibitions were subject to strict scrutiny and applying *O'Brien*).
[45] *Alameda Books*, 535 U.S. at 449 (Kennedy, J., concurring in the judgment) ("The ordinance may identify the speech based on content, but only as a shorthand for identifying the secondary effects outside."); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks omitted)).
[46] *Heideman*, 348 F.3d at 1195.

scrutiny under *O'Brien* because the Statute "does not . . . constitute impermissible content discrimination."[47]

The Statute is located in the Alcoholic Beverage Control Act, because its purpose relates to alcohol regulation, not speech suppression. In *City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002), Justice Kennedy concluded that the zoning law at issue there was "more in the nature of a typical land-use restriction and less in the nature of a law suppressing speech" because the zoning law was "just one part of an elaborate web of land-use regulations in Los Angeles . . . ."[48] Like the zoning law in *Alameda Books*, the General Requirements on Attire and Conduct listed in Utah Code § 32B-1-504 are part of a web of alcohol regulations found in Title 32B of the Utah Code.

The Statute's purpose is to regulate alcohol and reduce adverse secondary effects caused by combining sexual content in film with alcohol, not suppress speech. Accordingly, the Statute is subject to intermediate scrutiny under *O'Brien*.

2.  THE STATE REGULATES ALCOHOL SALES AND CONSUMPTION PURSUANT TO ITS LEGITIMATE GOVERNMENTAL POWER.

The State of Utah's regulation of alcohol sales and consumption during portrayals of sexual conduct, aimed at reducing adverse secondary effects, is within its general police powers.[49] Under the Twenty-First Amendment, states are given control over the "transportation

---

[47] *See Alameda Books*, 535 U.S. at 447 (Kennedy, J., concurring in the judgment) ("A zoning law need not be blind to the secondary effects of adult speech, so long as the purpose of the law is not to suppress it.")

[48] 535 U.S. at 447 (Kennedy, J., concurring in the judgment).

[49] *Bushco*, 729 F.3d at 1304 (finding that Utah's Sexual Solicitation Statute, enacted to protect public health, safety, and morals, was enacted within the State's constitutional power); *44 Liquormart, Inc.*, 517 U.S. at 515.

or importation" of alcohol into their territories.[50] "[S]uch control logically entails considerable regulatory power not strictly limited to importing and transporting alcohol."[51] The State of Utah also has constitutional power to protect public health and safety.[52]

Enacting laws that relate to alcohol regulation and reduce adverse secondary effects, and protecting public health and safety, are within Utah's governmental power.

3.  THE STATUTE FURTHERS THE IMPORTANT GOVERNMENT INTEREST OF REDUCING THE ADVERSE SECONDARY EFFECTS THAT RESULT FROM COMBINING ALCOHOL AND SEXUAL CONTENT IN FILM.

For a state to show that a statute furthers an important government interest, the evidence relied upon must be reasonably relevant to the problem that the state seeks to address.[53] A state "must have latitude to experiment, at least at the outset, and . . . very little evidence is required."[54] A state may rely on, among other things, prior judicial opinions[55] and scientific evidence.[56]

A plaintiff may then "cast direct doubt on [the government's] rationale, either by demonstrating that the [government]'s evidence does not support its rationale or by furnishing evidence that disputes the [government]'s factual findings . . . ."[57] If a plaintiff "fail[s] to cast

---

[50] U.S. Const. amend. XXI § 2.
[51] *California Retail Liquor Dealers Ass'n*, 445 U.S. at 107.
[52] *City of Erie*, 529 U.S. at 296.
[53] *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986).
[54] *Alameda Books*, 535 U.S. at 451 (Kennedy, J., concurring in the judgment) (citing *City of Renton*).
[55] *City of Erie*, 529 U.S. at 297 (O'Connor, J., joined by three justices) (citing *City of Renton* for the proposition that "reliance on a judicial opinion that describes the evidentiary basis is sufficient").
[56] *Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cty., Kan.*, 492 F.3d 1164, 1174 (10th Cir. 2007) ("legislators are free to consider anecdotal evidence, statistical data, prior cases, and their common sense.")
[57] *Alameda Books*, 535 U.S. at 438–39; *see also Abilene Retail No. 30*, 492 F.3d at 1173–74 (referring to the *Alameda Books* Court's "burden-shifting approach").

4

direct doubt" on the government's rationale, then the government "meets the standard set forth in *Renton*."[58] Here, Defendants rely on prior judicial opinions and testimony from the leading expert on the interplay between alcohol and sexually explicit images or films, Dr. William George. Dr. George's opinions are based on his own experiments and experience, as well as studies and peer-reviewed papers from others working in the field. Plaintiff's unsupported conclusions fail to cast direct doubt on Defendants' rationale, and thus the Defendants' important government interests meet the standard set forth in *Renton* and *Alameda Books*.

*Little is Required to Support the Governmental Interest*

A state is not required to "conduct new studies or produce evidence independent of that already generated by other cities . . . ."[59] A state is not required to obtain or rely upon evidence specific to each type of business to be regulated.[60] A state is not required to "provid[e] evidence that rules out every theory . . . that is inconsistent with its own."[61] "Nor are local governments required to demonstrate empirically that its proposed regulations will or are likely to successfully ameliorate adverse secondary effects."[62]

A state also does not need to show the actual intent of the enacting legislature.[63] Rather, a state must show the existence of a current governmental interest.[64] Otherwise courts would be

---

[58] *Alameda Books*, 535 U.S. at 439.

[59] *City of Renton*, 475 U.S. at 51.

[60] *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 584 (1991) (Souter, J., concurring) (findings of secondary effects in adult theaters appropriately extended to nude dancing establishments).

[61] *Heideman*, 348 F.3d at 1199.

[62] *Richland Bookmart, Inc. v. Knox Cty., Tenn.*, 555 F.3d 512, 524 (6th Cir. 2009) (citing *Alameda Books*, 535 U.S. at 439).

[63] *Barnes*, 501 U.S. at 582 (Souter, J., concurring) ("This asserted justification for the statute may not be ignored merely because it is unclear to what extent this purpose motivated the Indiana Legislature in enacting the statute. Our appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current

5

voiding statutes which would otherwise not be voided if a "legislator made a 'wiser' speech about it."[65]

Here, the State's important government interest that is furthered by the Statute is to reduce adverse secondary effects that result from the combination of alcohol and viewing sexually explicit films.[66] Defendants rely on prior judicial opinions and expert testimony to support their governmental interest.

*Secondary Effects Definition*

The Supreme Court has defined secondary effects as being correlated with, but not directly a consequence of, the impact of the speech.[67] Examples of secondary effects include: providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases,[68] crime in surrounding neighborhoods, a

---

governmental interest in the service of which the challenged application of the statute may be constitutional.").

[64] *Id.*; *see also Phillips v. Borough of Keyport*, 107 F.3d 164, 178 (3d Cir. 1997) ("There is a significant difference between the requirement that there be a factual basis for a legislative judgment presented in court when that judgment is challenged and a requirement that such a factual basis have been submitted to the legislative body prior to the enactment of the legislative measure. We have always required the former; we have never required the latter.").

[65] *O'Brien*, 391 U.S. at 384.

[66] Utah Code Ann. § 32B-1-502(1).

[67] *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (in the area of sound amplification: "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."); *see also City of Renton*, 475 U.S. at 48 (some regulations of businesses that purvey sexually explicit materials are treated as content-neutral because they "are justified without reference to the content of the regulated speech").

[68] *City of Erie*, 529 U.S. at 290.

decrease in property values, a decrease in the quality of the city's neighborhoods,[69] unsanitary

conditions, unlawful sexual activity,[70] and other deleterious effects.[71]

*Prior Judicial Opinions Support the Governmental Interest*

Defendants rely on judicial opinions, and authority and analysis in those opinions, to

support the State's important government interest.[72] Many courts have concluded, after

considering relevant studies, that adverse secondary effects resulting from combining alcohol

and sex or nudity (whether in film or live dancing) are reduced by government regulation, and

that such regulations do not violate the First Amendment.[73] Many of the cases just cited relate to

---

[69] *Alameda Books*, 535 U.S. at 434.
[70] *Heideman v. S. Salt Lake City,* 165 Fed. Appx. 627, 631 (10th Cir. 2006) (unpublished); *see also Boos v. Barry*, 485 U.S. 312, 320 (1988); *see also City of Renton*, 475 U.S. at 50–51; *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71–72 (1976) (Stevens, J., writing for plurality).
[71] *City of Erie*, 529 U.S. at 290.
[72] *Id.* at 297 (O'Connor, J., joined by three justices) (citing *City of Renton* for the proposition that "reliance on a judicial opinion that describes the evidentiary basis is sufficient").
[73] *California v. LaRue*, 409 U.S. 109, 118 (1972) (stating that "the Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one.") *disagreed with by 44 Liquormart, Inc.*, 517 U.S. at 515 (stating that the *LaRue* Court's reliance on the Twenty-first Amendment was erroneous, but persuaded that the same decision would have been reached without reliance on the Twenty-first Amendment); *G.M. Enterprises, Inc. v. Town of St. Joseph, Wis.*, 350 F.3d 631, 633 (7th Cir. 2003) (holding that "the Town had a reasonable basis for believing that the ordinances [regulating nude dancing and prohibiting nude dancing where alcohol is served] will reduce the undesirable 'secondary effects' associated with sexually oriented businesses . . . ."); *Blue Canary Corp.*, 251 F.3d at 1124 (noting that "[l]iquor and sex are an explosive combination"); *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd. of California,* 121 Cal. Rptr. 2d 729, 737 (Cal. Ct. App. 2002) (stating that *Blue Canaries'* "explosive combination" language "is still broadly recognized today"); *Ben's Bar, Inc. v. Village of Somerset,* 316 F.3d 702 (7th Cir. 2003) (upholding ordinance prohibiting the combination of alcohol service and nude dancing); *Gary v. City of Warner Robins,* 311 F.3d 1334 (11th Cir. 2002) (concluding that First Amendment right of nude dancer was not infringed at all by ordinance that prohibited nude dancing at establishment that primarily derived sales from alcohol because dancer "remain[ed] free to observe and engage in nude dancing [elsewhere]."); *BZAPS, Inc. v. City of Mankato,* 268 F.3d 603, 606–07 (8th Cir. 2001) ("BZAPS's proposed use differs little from many other adult performances. The fact that this performance is to last for only one night as opposed to what occurs in a so-called 'strip club'

7

the secondary effects of nude or semi-nude dancing during alcohol service. It is reasonable[74] for Defendants or the Utah legislature to rely on the cited cases and infer that alcohol service during films with sexually explicit content would produce adverse secondary effects, and that those effects would be reduced by regulation. That inference is validated by the facts of this case, where a scene in *Deadpool* depicts a nude dancing establishment, with dancers fully nude,[75] and the fact that scenes from other movies shown at Brewvies "contain graphic sexual content that would be similar to what would be seen at adult theaters and SOBs operating in Utah."[76] In fact, the images in *Deadpool* and other movies shown at Brewvies display more nudity and are more sexually explicit than what is allowed by live entertainers at DABC licensees.[77] State law prohibits a live sexually oriented entertainer from appearing or performing nude, and performing or simulating intercourse or other sexual acts.[78] Accordingly, prior judicial opinions validate the Statute and its application here. States are not "required affirmatively to undertake to litigate this issue repeatedly in every case."[79]

*Evidence Supports the Governmental Interest*

Evidence demonstrates that combining alcohol and depictions of sex or nudity produces adverse secondary effects. Dr. William George, a professor of psychology at the University of

---

that features an identical performance on a nightly basis does not preclude the city from reasonably believing that the uses are related.").

[74] *Alameda Books*, 535 U.S. at 452 (Kennedy, J., concurring in the judgment) ("[Los Angeles] is entitled to rely on that knowledge [of the streets of Los Angeles]; and if its inferences appear reasonable, we should not say there is no basis for its conclusion.")

[75] George Rebuttal Report pp. 21–23 doc. 39-1 (images from *Deadpool* depicting scene located in nude dancing establishment) Defs.' App. 41–43.

[76] *Id.* pp. 2, 25–66; *see also* Images from *Don Juan*, *50 Shades of Grey*, and *Zack and Miri Make a Porno*, attached to Dr. George's Rebuttal Report, Defs.' App. 43–84.

[77] Utah Code Ann. § 32B-1-505.

[78] *Id.*

[79] Barnes, 501 U.S. 560, 584–85 (1991) (Souter, J., concurring in the judgment).

Washington in Seattle, described at length in his Expert Reports and deposition testimony, the adverse secondary effects caused by combining alcohol and viewing sexual content in film.[80] In addition to being a professor of psychology, Dr. George has written more than 70 articles for peer-reviewed publications relating to the impact of the combination of sexual content and alcohol.[81] Even Plaintiff's expert witness has identified Dr. George as "the leading authority on the potentially dishibiting [sic] effects of alcohol on sexual perception and aggression."[82]

Dr. George's research demonstrates that:

- "Alcohol contributes causally to adverse responses to sexual conduct."[83]

- "Exposure to sexual content contributes causally to greater drinking."[84]

- "Alcohol and exposure to sexual content can have synergistic effects."[85]  Including "drinking in anticipation of exposure to sexual content . . . actual exposure to sexual content that then stimulates arousal and further drinking . . . and alcohol induced lowering of inhibitions thereby further increasing responsivity to the sexual content and thereby heightening the likelihood of adverse sexual outcomes."[86]

---

[80] Docs. 37-1, 39-1, attached as Defs.' App. pp. 4–13 and 20–84.
[81] George Dep. p. 9 attached as Defs.' App. p. 92.
[82] Linz Expert Report p. 7 ¶ 22 doc. 36-2 Defs.' App. 122.
[83] George Expert Report p. 2 doc. 37-1, Defs.' App. p. 5; *see also* George Dep. pp. 51–58, Defs.' App. 93–100.
[84] George Expert Report at 3 Defs.' App. 5; *see also* George Dep. p. 121–24, Defs.' App. 101–04 ("if you're feeling positive arousal from seeing titillating scenes like those in *Deadpool*, that would motivate you to want to maintain positive arousal by having a drink.").
[85] George Expert Report at 3 doc. 37-1, Defs.' App. p. 5.
[86] *Id.*

- "[A]dverse secondary effects—such as sex crimes (e.g., prostitution) and sexual violence (e.g., rape) are likely in communities adjacent to establishments providing their clientele with both alcohol and exposure to sexual content."[87]

- "Acute alcohol intoxication increases men's intentions to engage in sexually aggressive behavior."[88]

- "The presence of alcohol leads people to infer sexual intent in others."[89]

- "Exposure to sexual content can increase drinking."[90]

Dr. George's conclusions are confirmed by his research and experiments, and by supporting authorities.[91]

Dr. George's conclusions, his supporting experiments, the supporting peer-reviewed papers and reviews cited in his Report, and the prior judicial opinions meet the standard set by the Court in *Alameda Books*, *O'Brien*, and other secondary effects cases, and show that the Statute reduces adverse secondary effects.[92]

*Plaintiff's Expert Testimony Fails to Cast Direct Doubt on Defendants' Rationale*

Plaintiff's expert reports should be excluded or are not on point, and moreover, fail to cast direct doubt on the judicial opinions, research studies, and expert testimony relied upon by Defendants. Defendants filed their Motion to Exclude Plaintiff's Experts on January 27, 2017, and incorporate arguments made in that Motion, that Plaintiff's experts Dr. Bishop and Ms.

---

[87] *Id.*; Dr. George Dep. pp. 135–142, Defs.' App. 105–12.
[88] George Expert Report at 6 doc. 37-1, Defs.' App. p. 8.
[89] *Id.*
[90] *Id.*
[91] *See, e.g.*, *id.* at 2 (citing reviews by Abbey & Wegner, 2015; Abbey, Wegner, Woerner, Pegram, & Pierce, 2014; Crane, Godleski, Przybyla, Schauch, & Testa, 2015; Davis et al., 2014; and George & Stoner, 2000).
[92] *Alameda Books*, 535 U.S. at 449 (Kennedy, J., concurring in the judgment).

Parker should be excluded and that Dr. Linz's "Supplemental" Report should be excluded, by reference.

Plaintiff's expert testimony fails to cast direct doubt on Defendants' rationale because unlike Defendants' expert witness, Plaintiff's expert Dr. Linz does not have particularized knowledge regarding alcohol. Dr. Linz may have knowledge of secondary effects caused by sexually oriented businesses, but "[a]bsent from [his] broad statement of expertise is any indication of expertise concerning alcohol and its effects . . . ."[93] "Therefore, Dr. Linz's expertise is not applicable to aspects of the case pertaining to alcohol's effects combined with sexually explicit content on sexually aggressive or risky behaviors or on precursors of such behaviors (such as, sexual perception, sexual arousal, and sexual intent)."[94] And even Dr. Linz's statements regarding secondary effects of adult businesses, his purported area of expertise, are subject to important criticism. Dr. Linz's allegedly "exhaustive research project" of secondary effects studies is incomplete because it does not take into account "more recent studies . . . [containing] contradictory scientific evidence . . . particularly in alcohol serving SOBs . . . ."[95]

Dr. George further criticizes Dr. Linz's review of secondary effects studies, pointing out that Dr. Linz argued that "all studies showing adverse secondary effects are so methodologically flawed as to be deemed not credible; whereas all studies he judges as methodologically 'credible demonstrate either no negative secondary effects associated with adult businesses or a reversal of the presumed negative effects.'"[96] As Dr. George states, "[i]t strains credulity that all studies

---

[93] George Rebuttal Report p. 1 doc. 39-1, Defs.' App. p. 20.
[94] *Id.*
[95] *Id.* at 2.
[96] *Id.*

consistent with his opinion are judged as methodologically credible and that all studies

inconsistent with his opinion are judged as not methodologically credible . . . ."[97]

Dr. George also opines regarding the problem with "specifying crime as the outcome"

when considering secondary effects, as done by Dr. Linz.[98] Specifying crime as the outcome

when considering secondary effects is a problem, especially when considering secondary effects

related to alcohol consumption and viewing sexual content in film, for the following reasons:

- "Not all crimes are reported to authorities. Therefore, criminal activity indicative of

  negative secondary effects that does not get reported would not appear in Dr. Linz's

  analyses. Yet these unreported crimes have a serious and significant negative impact:

  they affect victims and their families; and the awareness of unreported crimes affects

  feelings of safety and security by community members, thereby constituting adverse

  secondary effects."[99]

- "It is well established that among the crimes that go unreported, sexual assault is a

  leading offense, so much so that is has been dubbed—like domestic violence—as a

  "hidden crime" (Parrot & Bechhofer, 1991). Therefore, sexually assaultive behavior that

  has been consciously or unconsciously stimulated by exposure to nudity and simulated

  intercourse, such as depicted in *Deadpool*, would be underreported and thus less likely to

  surface in the crime statistics relied on by Dr. Linz."[100]

- "If alcohol is involved in a sexual assault, then the likelihood that the victim will report

  or even acknowledge the assault is diminished (Cohn et al. 2013). Thus, an alcohol-

---

[97] *Id.*

[98] *Id.* at 3.

[99] *Id.*

[100] *Id.*

involved or alcohol-facilitated sexual assault occurring in the aftermath of viewing sexually explicit images like those shown in *Deadpool* or other movies containing explicit sexual content would be even less likely to be reported to authorities than a non-alcohol-involved assault."[101]

- "Choosing crime as an indicator of adverse effects necessitates that the researcher choose a metric to operationalize crime in the study design and data analyses. According to the aforementioned article by criminologists McCleary and Meeker, there is no single gold-standard metric for operationalizing crime. Also, the metric chosen by Dr. Linz – CFSs, i.e., calls for service – does not enjoy consensus among criminologists and is subject to important criticisms."[102]

Dr. Linz's testimony fails to cast direct doubt on Defendants' rationale because his knowledge and testimony are not related to the subject matter of this case: alcohol and viewing sexual content. Dr. Linz's testimony fails to cast direct doubt on Defendants' rationale because it fails to take into account the particularities of secondary effects that result from combining alcohol and sexual content. Further, Dr. George's testimony shows why Dr. Linz's studies and analysis are unreliable in general (because they leave out important recent studies and suffer from confirmation bias) and do not specifically relate to sexual aggression and sexual risk-taking (because identifying crime and police calls for service as outcomes omits other secondary effects).

Dr. George's testimony, as well as the judicial opinions cited above addressing alcohol regulations on businesses featuring nudity, show that the Statute furthers the important

---

[101] *Id.*
[102] *Id.*

government interest of reducing adverse secondary effects that result from combining alcohol and sexual content in film. Plaintiff's expert testimony fails to cast direct doubt on Defendants' rationale, and the Court should find that the Statute furthers an important government interest.

4. THE STATUTE INCONVENIENCES SPEECH NO MORE THAN NECESSARY TO ACHIEVE ITS PURPOSE.

Perhaps most important to Justice Kennedy in his concurring opinion in *Alameda Books* was the question of "how speech will fare under the city's ordinance."[103] In *Alameda Books*, adult businesses brought a section 1983 action challenging a City of Los Angeles ordinance prohibiting the operation of multiple adult businesses in a single building.[104] One adult business operated an adult bookstore, the other operated an adult video arcade.[105]

Below, the Ninth Circuit affirmed the district court's grant of summary judgment and permanent injunction.[106] The Ninth Circuit concluded that the ordinance in question was not designed to serve the city's government interest in reducing crime, and therefore violated the First Amendment.[107] The Supreme Court reversed the Ninth Circuit, concluding that the Court of Appeals erred in "replac[ing] the city's theory [based on a study] . . . with its own [theory] . . . ."[108] Justice Kennedy was concerned about inconveniencing speech because "the necessary rationale for applying intermediate scrutiny is the promise that [statutes] like this one may reduce the costs of secondary effects without substantially reducing speech."[109]

---

[103] *Alameda Books*, 535 U.S. at 450 (Kennedy, J., concurring in the judgment).
[104] *Id.* at 429.
[105] *Id.*
[106] *Alameda Books, Inc. v. City of Los Angeles*, 222 F.3d 719, 720 (9th Cir. 2000), *amended on denial of reh'g* (Aug. 28, 2000), *rev'd*, 535 U.S. 425 (2002).
[107] *Id.* at 724–28.
[108] *Alameda Books*, 535 U.S. at 437.
[109] *Id.* at 450 (Kennedy, J., concurring in the judgment).

Here, the Statute inconveniences speech very little, or not at all, by only prohibiting serving alcohol while showing films with sexual content. DABC licensees may show sexually explicit films if alcohol is not served. Films with sexual content are available at other Utah theaters. And prohibiting alcohol service during a film does not deprive a film of its message. There is no constitutional right to drink beer while watching a movie or serve beer while showing a movie.[110]

Showing *Deadpool* in Utah theaters was not suppressed. Plaintiff states that around the time the citation was issued, *Deadpool* was still showing in at least seven movie theaters in northern Utah (two months after it was released).[111] It is the highest grossing R-rated movie in the history of film.[112] No person in Utah who wanted to see *Deadpool* was prevented from being able to do so by the statute in question. And any theater that wanted to show *Deadpool* could do so, provided that it did not also serve alcohol.[113] Neither patrons nor theaters have a constitutional right to drink or serve alcohol while films are playing.

Prohibiting alcohol service during a film does not deprive a film of whatever message the film seeks to convey.[114] In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), businesses and dancers that wished to present "totally nude dancing" sued Indiana to enjoin enforcement of a

---

[110] *See Sammy's of Mobile, Ltd.*, 140 F.3d at 999 ("we are unaware of any constitutional right to drink while watching nude dancing").

[111] Pl.'s Mot. Prelim. Inj., p. 6, doc. 6.

[112] *Id.* at 5.

[113] *Ben's Bar, Inc.*, 316 F.3d at 725 n. 31 (stating that "alcohol prohibition is, as a practical matter, the least restrictive means of furthering the [defendant]'s interest in combating the secondary effects resulting from the combination of adult entertainment and alcohol consumption . . . .").

[114] *See Barnes*, 501 U.S. at 571 ("the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic.").

public indecency law, which required dancers to wear pasties and G-strings.[115] The Court applied the *O'Brien* test and found that Indiana's public indecency statute was "justified despite its incidental limitations on some expressive activity."[116] The Court concluded that Indiana was not seeking to prevent nude dancing's "erotic message," and stated that "the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic."[117] Dancing occurred at "numerous other . . . establishments and similar clubs without any interference from the State, so long as the performers wear a scant amount of clothing.[118]

Like the statute in *Barnes*, the Statute here does not seek to prevent or interfere with a film's message, erotic or otherwise. The Statute inconveniences expression even less than cases involving statutes completely prohibiting nude dancing. In cases involving nude dancing, the nudity that is prohibited is arguably part of the message that is being conveyed. But here, serving alcohol is unrelated to *Deadpool's* message. The prohibition bears no relation to the film's message whatsoever. The prohibition against serving alcohol while showing films with sexual content does not inconvenience speech greater than necessary to achieve the State's purpose.

---

[115] *Id.* at 562–63.
[116] *Id.* at 567.
[117] *Id.* at 570–71; *accord Heideman*, 348 F.3d at 1200 ("the requirement that dancers wear 'G-strings' and 'pasties' has a '*de minimus*' effect on their ability to communicate their message.").
[118] *Id.*

16

5.  SECTION 32B-1-504(7) IS CONSTITUTIONAL UNDER THE UTAH CONSTITUTION.

If the Court dismisses Plaintiff's speech claim grounded in the United States Constitution, Plaintiff's speech claim based on the Utah Constitution should be dismissed without prejudice for lack of jurisdiction.[119]

If the Court reaches the merits of Plaintiff's speech claim under the Utah Constitution, Plaintiff's claim fails as a matter of law because the sexually graphic images in *Deadpool* are not protected speech under the Utah Constitution.[120] The Utah Supreme Court analyzes state constitutional issues under the primacy model, which analyzes issues under the state constitution before resorting to the federal constitution.[121]

In interpreting the Utah Constitution, the Utah Supreme Court has stated that the drafters' intent must be ascertained.[122] Because the best evidence of the drafters' intent is the constitutional text, analysis begins with the text itself.[123] Plaintiff's Complaint argues that Section 32B-1-504(7) offends article 1, sections 1 and 15.[124] Article 1, section 1 states:

> All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; to worship according to the dictates of their consciences; to assemble peaceably, protest against wrongs, and petition for redress of grievances; to communicate freely their thoughts and opinions, being responsible for the abuse of that right.[125]

Article 1, section 15 states:

---

[119] *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).

[120] *American Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 28, 140 P.3d 1235 ("the Utah Constitution provides, not absolute, but limited protection for the expression of ideas and opinions.")

[121] *Id.* ¶ 7 (citing *West v. Thomson Newspapers*, 872 P.2d 999, 1004–07 (Utah 1994)).

[122] *State v. Hernandez*, 2011 UT 70, ¶ 8, 268 P.3d 822 (citing *American Bush*, 2006 UT 40, ¶ 12, 140 P.3d 1235).

[123] *Id.* (citations omitted).

[124] Compl., p. 10 ¶ 1, doc. 1.

[125] Utah Const. art. I, § 1.

No law shall be passed to abridge or restrain the freedom of speech or of the press. In all criminal prosecutions for libel the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact.[126]

These two sections were analyzed at length in *American Bush v. City of South Salt Lake*, 2006 UT 40, 140 P.3d 1235. In *American Bush*, nude dancing establishments in South Salt Lake brought suit after the South Salt Lake City Council adopted a new sexually oriented business ordinance.[127] The plaintiffs claimed that the Utah Constitution protected nude dancing.[128] The Utah Supreme Court disagreed and held, applying an originalism-type analysis, that article 1 sections 1 and 15 do not protect nude dancing.[129] The court reached its decision, in-part, because under the common law at the time the Utah Constitution was established, "[b]lasphemous and indecent publications, and the exhibition of indecent pictures and images, were always punishable at the common law."[130] Like the nude dancing at issue in *American Bush*, the images and conduct portrayed in *Deadpool* (which includes a depiction of nude dancing) would have been considered indecent under standards and case law at the time the Utah Constitution was ratified. The images in *Deadpool* are therefore not protected speech under the Utah Constitution, and judgment should be granted in favor of Defendants on Plaintiff's Utah Constitutional claim.

---

[126] *Id.* art. I, § 15
[127] *American Bush*, 2006 UT 40 ¶ 2, 140 P.3d 1235.
[128] *Id.* ¶ 1.
[129] *Id.*
[130] *Id.* ¶ 51 (quoting Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America* 285–86 (2d ed. 1891)); *see also id.* ¶ 56 ("Thus, when the Utah Constitution was ratified, it was illegal for either men or women to expose themselves to even willing participants in such a way as to excite lewd thoughts.").

## CONCLUSION

The Statute does not violate Plaintiff's First Amendment right to show films at its theater because the State has an important and substantial interest in reducing the adverse secondary effects caused by combining alcohol and sexual content in film. Defendants' interest is unrelated to speech suppression and inconveniences speech no greater than necessary to achieve its purpose. Accordingly, Defendants ask the Court to grant summary judgment in favor of Defendants.

DATED: March 6, 2017

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Greg Soderberg
PARKER DOUGLAS
Chief Federal Deputy Attorney General
DAVID N. WOLF
GREG SODERBERG
Assistant Utah Attorney General
*Counsel for Defendants*